| .GOTHARD, J.
This action began with a petition for wrongful death and damages in survival made by plaintiffs, Glenda and Mack Car-ruth, Sally and Richard Haliburton, and *33 Evelyn and Theodore Hayes, as a result of a fire at the Peacock Plaza Inn on May 29, 1994. Each couple lost a child in the fire. Named as defendants in the suit are, Peacock Plaza Inn, Inc., and its insurer, Penn-America Insurance Company (Penn-America), Taurus & Libra, Inc. (Taurus & Libra) which owns the property, as well as various employers of Peacock namely, Lillie Tickles, Lillie Harvey and Ruby Washington. The petition was later supplemented to add the partnership of Peacock Plaza Inn, and Shih-Shen Lu and Shih-Chien Lu, who are members in the partnership.[1]
LTaurus & Libra filed a cross-claim against Peacock Plaza Inn, Inc ., Peacock Plaza Inn, a partnership, Shih-Shen Lu, Shih-Chien Lu, Lillie Tickles, Ruby Washington and Penn-America. In the cross-claim, Taurus & Libra alleges the defendants, Peacock Plaza Inn, a partnership, Shih-Shen Lu and Shih-Chien Lu, breached an agreement in a lease agreement to provide comprehensive general liability insurance in the minimum amount of $1,000,-000.00 naming Taurus & Libra as an additional insured. Taurus & Libra wishes to avail itself of the benefit of the cost of defense of this lawsuit, which would have been provided by the policy. An answer was filed to the cross-claim and the matter was joined.
Taurus & Libra filed a motion for partial summary judgment on the issues in the cross-claim as to liability only, requesting the reservation of the determination of the amount of the judgment until the main demand is concluded. Penn-America filed an exception of no cause of action to the cross-claim made by Taurus & Libra. That exception was granted by the court and Penn-America was dismissed from the case.
Subsequently, the parties in the main demand reached a settlement and the court issued an order which dismissed all claims of plaintiffs against all defendants. Further, the order dismissed the cross-claim of Taurus & Libra against Penn-America, but reserved all claims of Taurus & Libra against Peacock Plaza Inn, a partnership, Peacock Plaza Inn, Inc., Shih-Shen Lu and Shih-Chien Lu.
The only remaining matter was heard by the court, after which judgment was rendered in favor of Peacock Plaza Inn, and against Taurus & Libra. It is from that judgment that Taurus & Libra appeals.
l4The cross-claim of Taurus & Libra alleges that defendants in cross-claim breached a portion of the lease agreement which required them to list Taurus & Libra as an additional insured on the policy covering the property. Defendants in cross-claim asserted the affirmative defense of waiver of rights. They argue that Taurus & Libra knew of the failure to list it as an additional insured, but failed to exercise its rights under the lease agreement. The trial court agreed with that reasoning and in reasons for judgment made the following statement:
The lease in this case contains a clause which requires the Lessor to give the Lessee ten days notice of a breach and it also gives the Lessee the time to cure the breech (sic) prior to eviction and/or cancellation of the lease. Here, this Court finds that T & L’s manager was told of the breech (sic) by it’s (sic) insurance agent, but failed to give the required notice to the Lessees.
This Court finds that failing to give notice to the Lessee, T & L failed to act in it’s (sic) own behalf and failed to give the Lessees the opportunity to cure the problem until after the loss had occurred. T & L never availed itself of the protection in the lease. Therefore, this Court finds for Peacock Plaza Inn and awards no damages to T & L.
The record shows that Peacock Plaza Inn, a partnership, and Taurus & Libra, entered into an agreement on October 12, 1988. The term of the lease was three *34 years, beginning on September 15, 1988, and was renewed in 1991 for an additional three years. The agreement also contains a surety clause which makes Shih-Shen Lu and Shih-Chien Lu parties to the lease and binds them in solido with the partnership for the “faithful execution of all of the obligations to be performed on the part of the Lessee”. An addendum to the lease contains the following clause:
Lessee agrees to maintain during the term of this lease, at lessee’s expense, insurance in solvent companies, doing business in the State of Louisiana, in the joint names of lessor and lessee | fiagainst O.L. & T. liability in the amount of not less than $1,000,000.00. Lessee will supply lessor with certifícate of insurance evidencing the above required coverage with lessor shown thereon as a named insured.
Another clause in the lease agreement upon which the ruling relies reads as follows:
Should the Lessee at any time violate any of the conditions of this lease, or discontinue the use of premises for the purpose for which they are rented, or fail to pay the rent, water bill, or other expenses assumed under this lease, punctually at maturity, as stipulated; or upon the adjudication of Lessee in bankruptcy, the appointment of a receiver for Lessee, or the filing of a bankruptcy, receivership or respite petition by the Lessee; or upon Lessee’s suspension, failure or insolvency; and should such violation continue for a period of Ten (10) days after written notice has been given Lessee, then at the option of the Lessor, the rent for the whole unexpired term of this lease shall at once become due and exigible; and Lessor shall have the further option to at once demand the entire rent for the whole term, or to immediately cancel this lease, or to proceed for past due installments only, reserving its right to later proceed for the remaining installments, all without putting Lessee in default, Lessee to remain responsible for all damages or losses suffered by Lessor, Lessee hereby assenting thereto and expressly waiving the legal notices to vacate the premises. Should an Agent or Attorney be employed to give special attention to the enforcement or protection of any claim of Lessor arising from this lease Lessee shall pay, as fees and compensation to such Agent' or Attorney an additional sum of ten per cent of the amount of such claim, the minimum fee, however, to be $25.00, or if the claim be not for money, then such sum as will constitute a reasonable fee, together with all costs, charges and expenses.
The parties agree that the lease was in force on May 29, 1994, the date of the fire, and that the liability insurance policy covering the property at that time did not list Taurus & Libra as a named insured. It is also undisputed that Taurus & Libra knew of the breach, and did not exercise its right under the lease agreement to demand a correction of the breach in ten days by written notification.
| ((Thus, the issue is not whether the defendants breached the lease agreement, but rather whether Taurus & Libra acquiesced and waived its right to proceed against defendants for damages resulting from the breach.
At trial Youping Lin, an officer of Taurus & Libra, testified that at some time before the fire occurred, Jay Williams, the insurance agent who handled the account, informed him in writing that Taurus & Libra was not a named insured on the renewal policy effective in September, 1993. Subsequently, Mr. Lin met with Mr. Williams in either November or December, 1993 to discuss the matter. Mr. Williams explained that listing Taurus & Libra on the policy would require an additional premium of $900.00 which Peacock refused to pay. Mr. Lin stated that he requested that Mr. Williams talk to the Lus and remind them of their responsibility under the lease. According to Mr. Lin’s testimony, Mr. Williams agreed to discuss the *35 matter with Mr. Lu. Mr. Lin stated that shortly after that meeting, he left the country and did not return until about ten or fifteen days before the fire.
On cross-examination Mr. Lin acknowledged that he understood his rights under the lease and failed to give any written notice to Peacock regarding the breach of the lease agreement. Mr. Lin further testified that he made certain the first year the lease agreement was in force that Taurus & Libra was a named insured on the policy. However, he admitted that he did not receive notice that Taurus & Libra was insured in any of the following years.
Documentary evidence introduced in connection with Mr. Lin’s testimony includes a letter dated May 18, 1994 and sent by certified mail to 17Taurus & Libra. The letter provides notice of Peacock’s intent to renew the lease for an additional three years commencing on September 15, 1994. Mr. Lin admitted he made no objection to the renewal of the lease, even though he knew at the time that Taurus & Libra was not insured, as required by the lease. Mr. Lin also acknowledged that he wrote a letter to the Lus from Taiwan dated May 9, 1994 in which he discussed matters concerning the mortgage and the management of Peacock, but did not mention the insurance.[2]
Harry Williams, the insurance agent who wrote the general liability policy for the Peacock Plaza Inn, testified that Taurus & Libra was originally on the policy as an additional insured. However, before the policy was accepted by Peacock, Taurus & Libra was removed to save ten percent of the policy premium. Mr. Williams wrote a letter to Mr. Lin to inform him that Taurus & Libra was not covered under the policy. A few months later in November, 1998, the two men met to discuss the matter and Mr. Williams suggested that Mr. Lin either investigate the possibility that the Lus were obligated to provide the coverage under the lease, or pay the additional premium himself. Mr. Williams stated that Mr. Lin did not seem concerned about the lapse of coverage, and refused to pay the additional premium. Mr. Williams stated that his interpretation of the conversation was that Mr. Lin was going to check the terms of the lease to discover if the Lus were responsible for insuring Taurus & Libra. He did not recall Mr. Lin making the request that Mr. Williams speak to the Lus.
1 sMr. Williams explained that he wrote two policies on the Peacock Plaza Inn, one for fire and other damage to the physical property owned by Taurus & Libra, and the general liability policy which is at issue in this case. Thus, he served as agent for both parties.
After reviewing all of the evidence, the trial court found that Taurus & Libra knew of the breach well in advance of the fire and did not avail itself of the remedies provided in the lease agreement between the parties. After a review of the record, we cannot find manifest error in that factual finding. It is well settled that a court of appeal may not disturb findings of fact in the absence of manifest error or unless they are clearly wrong. Stobart v. State, Through D.O.T.D., 617 So.2d 880 (La.1993); Rosell v. ESCO, 549 So.2d 840 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Crews v. Babin, 98-931 (La.App. 5 Cir. 3/10/99), 732 So.2d 551. Accordingly, we will not overturn the finding.
In brief to this court, Taurus & Libra argue first that its rights are not waived. We disagree. The lease agreement clearly obligated Peacock to list Taurus & Libra as an additional insured under the policy. Breach of that clause in the lease agreement entitled Taurus & Libra to demand compliance within ten days upon written notice. If Peacock continued *36 to be in noncompliance, Taurus & Libra had the option to demand payment of rent for the entire unexpired term or immediately terminate the lease and evict Peacock. Despite knowledge of the breach of the lease agreement, Taurus & Libra did not exercise that right.
Taurus & Libra bases its argument that it did not waive its right on two sentences in the lease agreement. The first is included in the lease term [8cited infra regarding the remedy for violation of the lease agreement in which it states that the lessee will remain “responsible for all damages or losses suffered by lessor”. That clause is included in the sentence which explains the lessor rights, and is clearly intended to protect the lessor after, rather than in lieu of, the exercise of its option to terminate the lease. We do not find that it defeats Peacock’s affirmative defense of waiver.
Taurus & Libra also maintains the lease provides that waiver is not a defense to a claim for enforcement of a lease provision. In support of that argument Taurus & Libra cites the following clause in the same provision of the lease agreement:
Failure to strictly and promptly enforce these conditions shall not operate as a waiver of Lessor’s rights, Lessor expressly reserving the right to always enforce prompt payment of rent or to cancel this lease, regardless of any indulgences or extensions previously granted.
This reservation of rights is included in and clearly intended to relate to Taurus & Libra’s right to terminate the lease for violation of the lease agreement. It does not preclude a waiver of rights should Taurus & Libra elect not to exercise its rights under this section of the lease agreement.
We find that Taurus & Libra, after being informed that the liability policy covering the property did not include it as a named insured, accepted the policy as written and opted not to enforce the lease provision which required Peacock to list Taurus & Libra as an additional named insured. Accordingly, Taurus & Libra waived its right to collect damages from Peacock. See, Leitz v. Lambert, 219 So.2d 2 (La.App. 4 Cir.1969). For the foregoing reasons, we affirm the trial court’s judgment.
AFFIRMED.

. Peacock Plaza Inn, Inc. and Peacock Plaza Inn are two separate entities.

. That letter was introduced into evidence. However, it is written in Chinese and there is no translation in the record.