LCHEHARDY, Judge.
In this personal injury case, both the plaintiff and a defendant appeal the trial court judgment rendered after trial. For the following reasons, we amend the judgment to reflect the trial court’s findings in its reasons for judgment and affirm as amended.
This case arises out of a one-vehicle accident which occurred at approximately 6:00 a.m. on December 17, 1989, on U.S. Highway 61 in St. Charles Parish. Plaintiff/appellant, Katrina Schexnayder, was traveling westbound on U.S. 61, on her way to work in Norco, Louisiana, when her vehicle left the roadway and ran into the end of a “buried-end treatment” guardrail, causing her 1988 Hyundai Excel to become airborne and tumble. The vehicle came to rest approximately one hundred and ten feet from the initial point of impact, on the north side of the guardrail. During the collision, Ms. Schexnayder was ejected from her vehicle, and sustained severe injuries.
Ms. Schexnayder subsequently filed suit against defendant/appellant, State of Louisiana, through the Department of Transportation and Development (DOTD), and defendant/appellee, LeBlanc Hyundai (Le-Blanc). Plaintiffs theory of liability against LeBlanc was that it had failed to properly repair her vehicle and that it had failed to warn her of dangerous conditions existing on her vehicle. Her theory of liability against the LDOTD was that the design of the guardrail which plaintiffs vehicle struck rendered the guardrail defective and unreasonably dangerous.
The matter proceeded to a five-day bench trial on the merits from November 30, 1998 through December 4, 1998. After taking the matter under advisement, on July 9, 1999, the trial court rendered a judgment and reasons for judgment, finding no liability on behalf of LeBlanc. The trial court assigned thirty percent fault to the DOTD (finding the guardrail unreasonably dangerous), and seventy percent comparative fault to the plaintiff. The trial court further found that as a result of the accident, plaintiff suffered $450,000.00 in general damages, $58.344.13 in past medical expenses, $50,500.00 in future medical expenses, $30,000.00 in future pain and suffering, and $3,120.00 in past lost wages. The total damage award of $591,964.13 was reduced by plaintiffs apportionment of *685 fault. Both plaintiff and the DOTD have appealed.
Plaintiff assigns three errors on appeal: the trial court was manifestly erroneous in finding no liability on behalf of LeBlanc Hyundai; the trial court was manifestly erroneous in finding the State, through the Department of Transportation and Development, only thirty percent Hable for plaintiffs damages; and the trial court abused its discretion in awarding plaintiff inadequate damages.
Defendant, the DOTD, also assigns three errors on appeal: the trial court was manifestly erroneous in applying 1977 AASHTO (American Association of State Highway and Transportation Officials) guideHnes to the guardrail; the trial court was manifestly erroneous in finding that DOTD knew or should have known that the guardrail was unreasonably dangerous; and the trial court was manifestly erroneous in finding DOTD liable to plaintiff for damages. However, the DOTD has failed to brief the first two of its listed errors. Instead, in the Argument section of its brief, the DOTD argues that plaintiffs actions/inactions were the sole cause of her accident; DOTD’s conduct was not a cause-in-fact or proximate cause of plaintiffs accident; and the guardrail in question did not pose an unreasonable risk of harm to the public. All of |4these arguments address one issue — the liability of the DOTD. Therefore, pursuant to La. U.R.C.A. rule 2-12.4, we will only address the sole issue argued by the DOTD in its brief, that the trial court was manifestly erroneous in finding the DOTD liable to plaintiff for damages.
With regards to plaintiffs first assignment of error, Ms. Schexnayder testified at trial that prior to her accident, she experienced problems with the brakes, clutch and steering on her Hyundai Excel. She also testified that she brought her vehicle to LeBlanc for service on five occasions in a two month period prior to her accident, but that the problems with her vehicle were not corrected. She introduced three work orders from LeBlanc showing that its personnel serviced the brakes on October 31, 1989, and the clutch on November 6, 1989, and November 8, 1989. Plaintiff also testified that she brought her vehicle in on two later occasions prior to her accident, but that no work was performed because the service department was full.
With regards to the specifics of her accident, however, plaintiff could not remember much about how it happened.
On appeal, plaintiff claims that she proved at trial that her accident was caused primarily by faulty brakes causing her vehicle to pull to the right, and that LeBlanc was negligent in failing to properly repair her brakes prior to the accident. Plaintiffs expert, Steve Killingsworth, testified at trial that the car’s brakes were faulty. He further testified that the combination of faulty brakes, excessive wear due to underinflation of the tires, and one of the rear tires being oversized, caused the vehicle to pull to the right while braking. However, LeBlanc’s expert, Dr. Geoffrey Germane, disputed Killings-worth’s testimony. Germane testified that any problems with the vehicle’s brakes, as described by Killingsworth, would not have effected the control of the vehicle while braking, and would not have caused it to pull to the right.
It is well settled that a court of appeal may not upset the factual findings of a trial court absent manifest error or unless they are clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). Where two reasonable views of the evidence exist, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong. Stobart v. State, 617 So.2d 880, 882-83 (La.1993). In this matter, the trial court gave greater weight to the testimony of Dr. Germane. Upon review, we cannot say Dr. Germane’s view of the evidence is unreasonable.
*686 Furthermore, in its reasons for judgment, the trial court noted that the odometer reading of plaintiffs vehicle at the time of the accident showed that plaintiff had driven her vehicle 3,893 miles from the last documented visit to LeBlanc (on November 8, 1989). The trial court found it unlikely that plaintiff could have driven her vehicle that many miles without incident if she were having difficulty controlling the vehicle.
In its reasons, the trial court also noted that the doctrine of res ipsa loquitur did not apply to this case, as there were “numerous other reasons why the vehicle could have left the roadway.” Considering the lack of “affirmative proof as to the cause of the vehicle leaving the roadway,” the trial court found that “[a] mere pulling to the right of the vehicle, which the plaintiff had been able to control, without evidence of some failure which would have suddenly rendered the vehicle uncontrollable, is not sufficient to impose liability upon LeBlanc Hyundai.” Upon review, we find this to be a reasonable conclusion, and therefore find that the trial court was not manifestly erroneous in finding LeBlanc Hyundai free from fault for plaintiffs accident.
Plaintiffs second assignment of error and the DOTD’s assignment of error will be discussed together in this section, as they both address the DOTD’s liability. Plaintiff argues on appeal that the DOTD should have been assigned a greater percentage of fault for its defective guardrail, while the DOTD argues that it should have been found free from fault, as the guardrail in question met applicable safety standards when it was constructed in 1976.
LWe note that with regards to a determination of whether the DOTD was liable, in its reasons for judgment, the trial court properly cited Begnaud v. DOTD, 631 So.2d 467 (La.App. 5 Cir.1994), writ denied, 635 So.2d 230 (La.1994), in which we held:
In its brief, DOTD states that the trial court correctly cited Myers, supra,[1] and Dill, supra,[2] for the proposition that the failure of DOTD to reconstruct an old highway to meet modern standards does not in and of itself establish the existence of a hazardous defect. The trial court, in its reasons for judgment, correctly pointed out that the holding in Myers, supra, did not relieve DOTD from its duty to keep the highways and shoulders in a reasonably safe condition. In Dill, supra, the Supreme Court of Louisiana clarified the holding by stating that Myers does not stand for the proposition advanced by DOTD that it can escape liability simply by showing that a highway met the existing standards when it was built. As correctly pointed out by the trial court in its reasons, the liability of DOTD is determined on the basis of whether the condition of the highway constituted an unreasonable risk of injury which caused the accident. The trial court then proceeded to consider the condition of the roadway, the shoulder of the roadway, and other facts, to determine whether an unreasonable risk of harm existed which caused this accident. As pointed out by Dill, supra, design standards at the time of original construction and at the time of the accident may be relevant factors in deciding this issue, but are not determinative of the issue.
Id. at 469
The trial court further noted in its reasons for judgment that plaintiffs accident reconstruction and highway design expert, Herman Hill, testified at trial that research within the industry prior to the guardrail’s construction showed that buried-end guardrail treatments could cause vehicles to vault or be directed on top of the guardrail. Mr. Hill also testified that warnings about these types of accidents *687 were published in the industry both before and after the guardrail’s construction. Mr. Hill further testified that there were safer alternatives to this type of guardrail in existence prior to the guardrail’s construction.
In its reasons for judgment, the trial court concluded that:
[t]he purpose of a guardrail is to prevent or reduce injury and subsequent damage to a motorist and his property by redirecting a vehicle back onto the highway and to prevent impact with obstacles. I find that a guardrail which causes vehicles to ramp-up on top of it and be vaulted into[7the air is unreasonably dangerous. All of the testimony at trial indicated that this is exactly what happened to the plaintiffs vehicle. I further find that DOTD either knew, or at the very least should have known, of this propensity for this type of guardrail when it was installed in 1976. This unreasonably dangerous guardrail was a cause in fact of the plaintiffs injuries.
Of course, if plaintiffs vehicle had never left the roadway it would not have struck the guardrail. Therefore, I believe that plaintiff herself must be held responsible for a greater percentage of fault than DOTD. However, I am absolutely convinced that the extent of plaintiffs injuries would not have been nearly as severe if there had been a proper guardrail that would not have vaulted her vehicle into the air. Under the facts of this case, I find that it is appropriate to apportion fault 70% to plaintiff and 30% to DOTD.
The standard of review for liability and apportionment of fault is the manifest error standard. Crews v. Babin, 98-931 (La.App. 5 Cir.3/10/99), 732 So.2d 551, 552, citing Brown v. Beauregard Elec. Co-op., Inc., 94-512 (La.App. 3 Cir.12/14/94), 647 So.2d 668. Upon our review of the record herein, we find that the trial court made a reasonable determination with regards to the liability of the DOTD, and in its apportionment of fault. Therefore, as the trial court’s findings are not manifestly erroneous, we cannot disturb them on appeal.
In plaintiffs final assignment of error, plaintiff alleges that the damages awarded by the trial court were abusively low. Upon review, we note that the trial court discussed plaintiffs “multiple and extensive injuries” at length in its reasons for judgment. The trial court discussed the trial testimony regarding plaintiffs injuries from her initial examinations in the emergency room through her need for future medical treatment.
As a result of her accident, Ms. Schex-nayder suffered multiple facial and jaw fractures, a right lineal skull fracture, a basilar skull fracture, a compressed fracture of the L-l disc, a concussion, a right clavicle fracture, a right first rib fracture, multiple bruises and blood loss. Several surgeries were necessary to stabilize Ms. Schexnayder and repair the damage to her face and jaw.
|sMs. Schexnayder was released from the hospital on January 1, 1990, and was released to return to work by one of her treating physicians on February 26, 1990. She returned to work as a security guard, albeit in a sedentary position, in March of 1990.
The trial court found that the plaintiffs injuries as listed above “were all serious, painful and debilitating injuries” which caused Ms. Schexnayder to “suffer tremendously.” The trial court further found that future surgeries were necessary to correct plaintiffs facial injuries, and that Ms. Schexnayder would incur future pain and suffering as a result of her injuries.
It is well settled that the discretion vested in the trier of fact with regards to awards of general damages is
“great,” and even vast, so that an appellate court should rarely disturb an award of general damages. Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, *688 in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award.
Youn v. Mantime Overseas Corp., 623 So.2d 1257, 1261 (La.1998).
While we believe the total amount of damages awarded may be on the low side for the injuries suffered by the plaintiff, we cannot say that the award is below that which a reasonable trier of fact could assess. Accordingly, because the damages awarded by the trial court are within its vast discretion, they cannot be disturbed on appeal.
Finally, we note that while the trial court’s judgment makes an award to plaintiff against the DOTD in the amount of $177,589.23 (which is 30% of the total damage award), it does not contain the itemized and total amount of damages as listed in its reasons for judgment rendered on the same day and in conjunction therewith, nor does it include the trial court’s specific findings with regards to liability and apportionment of fault.
Accordingly, we hereby amend the trial court’s July 9,1999 judgment to reflect the trial court’s findings of no liability against LeBlane Hyundai, thirty percent liability | flagainst the State, through the Department of Transportation and Development, and seventy percent comparative fault against Katrina Schexnayder. The judgment is further amended to reflect the trial court’s award to plaintiff, against the State, through the Department of Transportation and Development, of $450,000.00 in general damages, $58.344.13 in past medical expenses, $50,500.00 in future medical expenses, $30,000.00 in future pain and suffering, and $3,120.00 in past lost wages (for a total damage award of $591,-964.13), subject to a seventy percent reduction in favor of the State, through the Department of Transportation and Development.
Therefore, for the foregoing reasons, the July 9, 1999 judgment of the trial court is hereby affirmed as amended.
AFFIRMED AS AMENDED.
CANNELLA, J., concurs with reasons.

. Myers v. State Farm Mutual Auto. Ins. Co., 493 So.2d 1170 (La.1986).

. Dill v. DOTD, 545 So.2d 994 (La.1989).